UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JASON FERGUSON and PAUL TEITLER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CBD AMERICAN SHAMAN, LLC and STEPHEN VINCE SANDERS II, <br><br> Defendants. | Civil Action No. 4:25-cv-00028-SRB |

### DEFENDANTS' SUGGESTION IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

Defendants CBD American Shaman, LLC ("American Shaman"), and Vince Sanders II hereby move to compel arbitration of the individual claims brought by Plaintiffs Jason Ferguson and Paul Teitler and to stay all proceedings pending the resolution of arbitration. As explained in Defendants' contemporaneously filed motion to dismiss, which is incorporated in full by reference, Plaintiffs' putative class claims should be dismissed.

### INTRODUCTION

This case is about American Shaman's "Advanced Alkaloids" chewable tablet product. (*See generally* Compl., DN 1). Plaintiffs Jason Ferguson and Paul Teitler purchased the product from American Shaman, or one of its "authorized retailers," in California and Pennsylvania, respectively. (*Id.* ¶¶ 8-9). Plaintiffs assert a variety of individual and putative class claims against American Shaman and Sanders under California law and Pennsylvania law, contending that American Shaman failed to disclose Advanced Alkaloids' addictive potential on the label and advertisements. (*See id.* ¶ 42). In addition to seeking to represent putative classes of consumers in California, Pennsylvania, and nationwide, Plaintiffs request restitution, disgorgement of profits,

an injunction "shutting down" Advanced Alkaloids, and more. (*Id.* ¶¶ 45, "Wherefore" ¶). Plaintiffs' individual claims are subject to a binding arbitration agreement. The Court should compel the binding arbitration process that Plaintiffs contractually agreed to and stay all proceedings pending the outcome of arbitration. Plaintiffs' putative class claims should be dismissed for the reasons discussed in Defendants' motion to dismiss.

## FACTS

American Shaman's products are subject to American Shaman's Terms and Conditions ("T&Cs"). On its website, American Shaman's T&Cs" are linked as "Terms and Conditions," alongside "About Us," "Shop," "Store Locator," and "Contact"—among other frequently accessed links.[1] American Shaman's T&Cs are accessible at the bottom of every webpage on American Shaman's website, including the product webpage for Advanced Alkaloids.[2] The T&Cs advise customers that their continued use of the American Shaman website and/or purchasing products from the website constitutes "acknowledgement and acceptance of these terms of service" and "represent[s][,]" among other warranties, that the customers have "read, understand, and agree to be bound by the terms of service[.]"[3] In addition to receiving notice of the T&Cs on the website, online customers are required to accept the T&Cs at the point of sale. Customers cannot purchase any item, including Advanced Alkaloids, without checking a disclaimer box indicating that they have read and agreed to the T&Cs, which are hyperlinked next to the disclaimer. (Defs.' Mot. Dismiss, Ex. 1, James McNair Declaration ("Dec.") ¶ 14). The T&Cs have been present on American Shaman's website since 2019 and have not changed. (*Id.* ¶ 13).

---

[1] https://cbdamericanshaman.com/ (last visited Mar. 13, 2025).
[2] https://cbdamericanshaman.com/7-oh-chewable-tablets-white-vein-advanced-alkaloids (last visited Mar. 13, 2025).
[3] https://cbdamericanshaman.com/terms-and-conditions (last visited Mar. 13, 2025).

The T&Cs include a "**Dispute Resolution**" clause that contains an arbitration agreement, delegation clause, choice-of-law provision, and class action waiver:

> In the event you purchase products from CBD American Shaman or access any website associated with CBD American Shaman, you and CBD American Shaman agree that any claim or dispute at law or equity that has arisen or may arise, relating in any way to or arising out of any service rendered by CBD American Shaman, will be resolved in accordance with the provisions set forth in this Section. Please read this Section carefully. It affects your rights and will impact on how claims you and we have against each other are resolved.
>
> You agree that the laws of the State of Missouri, without regard to principles of conflict of laws, will govern any claim or dispute that has arisen or may arise between you and CBD American Shaman.
>
> **You and CBD American Shaman each agree that any and all disputes or claims that have arisen or may arise between you and CBD American Shaman shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify. For claims filed in Missouri, the term "small claims court" does not include the Associate Circuit Division.** The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.
>
> **YOU AND CBD AMERICAN SHAMAN AGREE THAT EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION OR PROCEEDING. UNLESS BOTH YOU AND CBD AMERICAN SHAMAN AGREE OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, OR CLASS PROCEEDING. ALSO, THE ARBITRATOR MAY AWARD RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF NECESSITATED BY THAT PARTY'S INDIVIDUAL CLAIM(S).**
>
> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, including, but not limited to, any claim that all or any part of this Agreement to Arbitrate or this Agreement is void or voidable.

> The arbitrator will decide the substance of all claims in accordance with the laws of the State of Missouri, including recognized principles of equity, and will honor all claims of privilege recognized by law. The arbitrator's award shall be final and binding, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.
>
> **THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**[4]

Plaintiffs seem to allege they purchased the Advanced Alkaloids products in person at either an American Shaman store or an authorized retailer. (Compl. ¶ 94). But they admit they "review[ed]" the Advanced Alkaloids' product "labeling" "at the time of purchase." (*Id.* ¶ 11). The product label contained a QR code that linked directly to American Shaman's website, which included a webpage with the T&Cs. (Defs.' Mot. Dismiss, Ex. 2). Similarly, based on his allegation that he purchased the Advanced Alkaloids product in 2024 while in California, Ferguson could only have purchased the product through American Shaman's website. (Compl. ¶ 94; Dec. ¶ 10). Neither American Shaman nor any authorized retailer has operated a physical "store" in California since September 2023. (*Id.* ¶¶ 9-11). Ferguson's purchase of the product using American Shaman's website required Ferguson to agree and consent to the T&Cs. (*Id.* ¶¶ 7-10).

As both Plaintiffs admit to reviewing Advanced Alkaloids' label, which incorporated the American Shaman T&Cs, both Plaintiffs agreed to be bound by the T&Cs. Similarly, Ferguson must have explicitly consented to the T&Cs at the point of sale. Under the T&Cs, both Plaintiffs are subject to the arbitration agreement because they either "purchase[d] products from CBD American Shaman or access[ed] any website associated with CBD American Shaman" to purchase Advanced Alkaloids. The Court should grant Defendants' motion.

---

[4] https://cbdamericanshaman.com/terms-and-conditions (last visited Mar. 13, 2025).

## **LEGAL STANDARD**

"Arbitration agreements are governed by the Federal Arbitration Act ("FAA")." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). Section 2 of the FAA governs contracts, like Plaintiffs', that evidence a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction[.]" 9 U.S.C. § 2; (*e.g.*, Compl. 90 ("Defendants' contract with Plaintiffs . . . .")). "Under § 3 of the FAA," which the Dispute Resolution clause references, "a party may apply to a federal court for a stay of the trial of an action upon any issue referable to arbitration under an agreement in writing for such arbitration." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (internal quotation marks omitted).

When confronted with a motion to compel arbitration based on an arbitration agreement, the Court must "ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR–ARK, LLC*, 841 F.3d 781, 784-85 (8th Cir. 2016). "If the parties have a valid arbitration agreement that encompasses the dispute, a motion to compel arbitration must be granted." *Id.* at 784. The party seeking to compel arbitration bears the burden of proving the existence of an agreement. *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022). "[T]he party resisting arbitration bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022). "Any doubts in construing the contract language on arbitrability 'should be resolved in favor of arbitration.'" *J.E. Dunn Const. Co. v. Griffin*, 2012 WL 32403, at *3 (W.D. Mo. Jan. 5, 2012).

"When a motion to compel arbitration is accompanied by matters outside the pleadings, a court will evaluate the motion under a summary-judgment-like standard, viewing facts in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor."

*Courtright v. Epic Games, Inc.*, No. 2:24-CV-04055-BCW, 2025 WL 558560, at *3 (W.D. Mo. Feb. 13, 2025). Once the "moving party has carried its burden, the nonmoving party must then go beyond its original pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by a trial." *Olson v. City of N. Liberty*, 451 F. Supp. 3d 1010, 1022 (S.D. Iowa 2020). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010).

## ARGUMENT

### I. Plaintiffs and American Shaman have a valid arbitration agreement.

Plaintiffs each agreed to a valid arbitration agreement with American Shaman. To determine whether the parties entered into an arbitration agreement, federal courts apply state law principles of contract formation. *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007). Under Missouri law, which the T&Cs apply, "[t]he essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (en banc) (internal quotation marks omitted). The arbitration agreement is a valid, bargained-for contract.

First, Plaintiffs accepted American Shaman's offer to sell the Advanced Alkaloids product subject to the T&Cs when they accessed the American Shaman website before making their purchases and by reviewing the product's label at the time of purchase. The T&Cs's "Dispute Resolution" provision constitutes a browsewrap agreement between American Shaman and Plaintiffs. "A browsewrap agreement never asks users to affirmatively agree to terms but 'imputes assent through the user's performance of some specific act,' like 'using or accessing' the digital product or website." *Courtright*, 2025 WL 558560, at *17 (citing *Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021)). The validity of a browse wrap agreement depends on "whether there is

6

Case 4:25-cv-00028-SRB   Document 18   Filed 03/14/25   Page 6 of 12

adequate notice to create 'actual or constructive knowledge of the website's terms and conditions.'" *Id.* (citing *inter alia Major v. McCallister*, 302 S.W.3d 227, 230 (Mo. App. 2009)). Constructive knowledge of the T&Cs will be imputed where a user is put on "[i]nquiry notice," which "exists where the platform puts a reasonably prudent user on notice of the terms, taking into account the platform's overall design and content." *Id.*

Here, regardless of whether they actually clicked the T&Cs link on American Shaman's website, both Plaintiffs had constructive knowledge of the T&Cs because American Shaman's website put users on inquiry notice of the existence of the T&Cs. On its website, American Shaman's T&Cs are linked as "Terms and Conditions," alongside other frequently accessed links. Users looking for commonly sought after information like "Store Locator," "About Us," and "Contact," would see the "Terms and Conditions" link. The T&Cs link is also conspicuously included on every webpage on American Shaman's website, including the product webpage for Advanced Alkaloids. The font size of the link is consistent with other links on the webpage, and the font color permits the link to stand out against the webpage background. Where inquiry notice exists, "the user is deemed to have notice of all facts that reasonable inquiry would disclose." *Foster*, 15 F.4th at 864. A reasonable inquiry into the T&Cs would reveal a the Dispute Resolution provision, and therefore, Plaintiffs had constructive knowledge of the arbitration agreement and consented to the T&Cs.

Further, Ferguson had actual knowledge of the T&Cs and consented to them by purchasing the product through American Shaman's website. Defendants have submitted sufficient evidence to show that Ferguson's allegation that he purchased the Advanced Alkaloids product in 2024 in California must mean that Ferguson did so through American Shaman's website. (Compl. ¶ 94; Dec. ¶¶ 7-10). Indeed, Ferguson does not identify any specific "store" where he allegedly

7

purchased the product, and it is uncontroverted that neither American Shaman nor an authorized retailer operated a physical store in California in 2024. (Dec. ¶¶ 7-10). For online purchasers, like Ferguson, the T&Cs are part of the clickwrap agreement that a purchaser must have consented to as part of the transaction.

"A clickwrap agreement is an online agreement created by having users click an 'I agree' button or check an 'I agree' box (or something similar) before the user is granted access to the site." *Courtright*, 2025 WL 558560, at *17 (citation omitted). "In these types of agreements, mutual assent is rarely an issue because the user sees the list of the terms and conditions before accepting them." *Foster*, 15 F.4th at 863. Regardless of whether Ferguson actually read the T&Cs before he clicked the disclaimer, a party "capable of reading and understanding a document is charged with the knowledge of its contents if he or she signs it, even if the party fails to review it." *Repair Masters Const., Inc. v. Gary*, 277 S.W.3d 854, 858 (Mo. App. 2009). Because Ferguson consented to the T&Cs, he is bound by the arbitration agreement. *Courtright*, 2025 WL 558560, at *8 ("Plaintiff . . . states she cannot recall ever creating an account[] . . . [but] provides no alternative argument as to how K.C. could have accessed the Platform other than by creating an account. Therefore, since Plaintiff admits that K.C. uses VRChat, Plaintiff has effectively conceded that K.C. must have created an account. Because VRChat has demonstrated that a user cannot create an account without agreeing to its TOS, VRChat has linked the TOS and its binding arbitration clause to K.C.").

**II. Plaintiffs' individual claims fall within the terms of the arbitration agreement.**

As explained in Defendants' motion to dismiss, Plaintiffs waived their putative class claims. The only claims that Plaintiffs agreed they may bring are their individual claims. And even

Plaintiffs' individual claims are improper in this Court because the claims inarguably fall within the arbitration agreement contained in the T&Cs.

An order to arbitrate "should not be denied unless it may be said with positive assurance that the arbitration clause does not cover the asserted dispute." *Getz Recycling, Inc. v. Watts*, 71 S.W.3d 224, 228 (Mo. App. W.D. 2002). The arbitration agreement explicitly and unequivocally applies to "any and all disputes or claims that have arisen or may arise between [Plaintiffs] and CBD American Shaman."[5] Such claims and disputes include claims related to Plaintiffs' "purchase [of American Shaman] products," as well as "any claim or dispute at law or equity that has arisen or may arise, relating in any way to or arising out of any service rendered by CBD American Shaman[.]"[6] The arbitration agreement leaves no doubt—Plaintiffs' individual claims "will be resolved in accordance with the" binding arbitration process "set forth in" the T&Cs.[7]

In fact, even " "gateway questions of arbitrability," such as "whether [the arbitration] agreement covers a particular controversy," should be compelled to arbitration. *Rent-A-Ctr., W., Inc.*, 561 U.S. at 69. This is because the T&Cs delegate such questions to arbitration, stating conspicuously that

> the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, including, but not limited to, any claim that all or any part of this Agreement to Arbitrate or this Agreement is void or voidable.[8]

Due to the delegation clause within the arbitration agreement, "the arbitrator has exclusive jurisdiction over threshold questions of arbitrability, and the Court must not decide the matter."

---

[5] https://cbdamericanshaman.com/terms-and-conditions (last visited Mar. 13, 2025).
[6] *Id.*
[7] *Id.*
[8] *Id.*

*Courtright*, 2025 WL 558560, at *6 (*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)).

### III. The Court should stay all proceedings.

Plaintiffs entered into the binding arbitration agreement in the T&Cs. The arbitration agreement applies to Plaintiffs' individual claims. Plaintiffs' complaint does not challenge the validity, enforceability, or scope of the arbitration agreement. Pursuant to the Federal Arbitration Act, which the arbitration agreement references, the Court "shall . . . stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3; *see generally Smith v. Spizzirri*, 601 U.S. 472 (2024).

### CONCLUSION

For the reasons explained above, Defendants respectfully request that the Court grant Defendants' motion and issue an order compelling arbitration of Plaintiffs' claims in accordance with the arbitration process set forth in the T&Cs and staying all proceedings in this matter pending the resolution of the arbitration. In the alternative, the Court should dismiss Plaintiffs' putative class claims and individual claims for all the reasons discussed in Defendants' motion to dismiss.

Respectfully submitted,

*/s/* Nolan M. Jackson
Nicholas Porto
The Porto Law Firm
1616 West 45th Street
Kansas City, MO 64111
Phone: (816) 463-2311
Fax: (816) 463-9567
nporto@portolaw.com

Nolan M. Jackson (admitted *pro hac vice*)
Frost Brown Todd LLP
20 F Street NW, Suite 850
Washington, DC 20001

Phone: (202) 292-4150
Fax: (202) 292-4151
njackson@fbtlaw.com

J. Austin Hatfield (admitted *pro hac vice*)
Frost Brown Todd LLP
400 West Market Street, 32nd Floor
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 581-1087
ahatfield@fbtlaw.com

## CERTIFICATE OF SERVICE

       The undersigned attorney hereby certifies that the foregoing document was filed this 13th day of March 2025 via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

Leo B. Oppenheimer
J. Broc Exposito
Oppenheimer Law, LLC
3145 Broadway Boulevard
Kansas City, MO 64111
loppenheimer@oppenheimer-law.com
bexposito@oppenheimer-law.com

Joel D. Smith
Smith Krivoshey, PC
867 Boylston Street
5th Floor, Suite 1520
Boston, MA 02116
joel@skclassactions.com

Yeremey O. Krivoshey
Smith Krivoshey, PC
166 Geary Street, Suite 1500-1507
San Francisco, CA 94108
yeremey@skclassactions.com

*Counsel for Plaintiffs*

                                                        */s/* Nolan M. Jackson
                                                        *Counsel for Defendants*

0139469.0799690   4897-7782-8136v1